QUESTION: Is a member of the city planning board of the City of Pensacola required to live within the corporate limits of the city?
SUMMARY: Where a city charter provides that a city planning board shall consist of a certain number of "citizen members" chosen by the city council, such members must be citizens and, thus, residents of the city. As a general rule, residence within a district or other political unit for which an officer is elected or appointed, however desirable, is not a necessary qualification of an officer in the absence of an express statutory or constitutional provision requiring such residence. [See] 26 Fla. Jur. Public Officers s. 27, p. 187, citing State ex rel. Attorney General v. George, 3 So. 81 (Fla. 1887). Accord: Attorney General Opinion 074-234. Notwithstanding this general rule, however, you have suggested that s. 114.01(4), F.S., may be determinative of your inquiry. That section provides that an office "shall be deemed vacant" by the incumbent's "ceasing to be an inhabitant of the state, district, county, town or city for which he shall have been elected or appointed." However, s. 114.01 concerns the manner in which vacancies in office may occur, and does not, in and of itself, establish any qualifications — including residence qualifications — for any particular office. In other words, a public officer cannot cease to be an inhabitant of the political entity from which he is elected or appointed, unless he is in fact an inhabitant of such entity; and, unless he is constitutionally or statutorily required to be an inhabitant, his noninhabitance within the boundaries of such entity cannot create a vacancy in his office. Cf. AGO's 055-182, 072-269, and 073-52 which discuss the effect of s. 114.01(4) when an officer, required by other statutory or constitutional provisions to be a resident of the political entity he represents, ceases to reside within the boundaries of that entity. It might be noted, moreover, that Art. X, s. 3, State Const., which first appeared in the 1968 Constitution, provides in pertinent part that a "[v]acancy in office shall occur upon . . . failure to maintain the residence required when elected or appointed." (Emphasis supplied.) To the extent that there is a conflict between this constitutional language and s. 114.01(4), supra, the constitutional provision should, of course, be given effect. Thus, insofar as your question relates to the existence vel non of a residence requirement for members of the City Planning Board of the City of Pensacola, the aforementioned general rule controls, i.e., in the absence of a statutory or constitutional provision requiring it, residence in the City of Pensacola is not necessary. As to whether a residence requirement exists in this instance, s. 47, Art. V, of the Charter of the City of Pensacola, provides in pertinent part as follows:
A. There shall be a City Planning Board of seven (7) members, consisting of the Director of Public Service and six (6) citizen members chosen by the council because of their knowledge of city planning. . . . (Emphasis supplied.) The word "citizen," as traditionally defined, refers to . . . A member of a free city or jural society, (civitas,) possessing all the rights and privileges which can be enjoyed by any person under its constitution and government and subject to corresponding duties. "Citizens" are members of community inspired to common goal, who, in associated relations, submit themselves to rules of conduct for the promotion of general welfare and conservation of individual as well as collective rights. [Black's Law Dictionary (4th Ed. 1968), p. 310.] As used in American law, the word "citizen" is defined by Black's Law Dictionary, id., as "a member of the political community. . . ." See also, United States v. Cruikshank,92 U.S. 542, 549 (1875); Herriott v. City of Seattle, 500 P.2d 101, 109
(Wash. 1972); and Fla. Jur. Words and Phrases, p. 139, which states that "[t]he term `citizen,' as it is commonly understood, implies membership in a political body. . . ." In the instant situation, the "political body" mentioned repeatedly in the charter's description of the functions of the city planning board is "the city." Thus, within the context of such description, it would appear that the word citizen means a member of the political body of the City of Pensacola; and since, by definition, membership in that political body cannot be obtained unless residence within the city is acquired, I am of the opinion that members of the City Planning Board of the City of Pensacola must be residents of that city. This conclusion is consistent with the view expressed in State ex rel. Attorney General v. George, supra, that, as a matter of policy, "none but fit persons should be selected or appointed — fit, not only in respect to capacity, but also in having citizenship to identify them in interest with the communities in which their official duties were to be performed." (Emphasis supplied.)